Good morning, may I please invite Andrew Love for Appellant Fleming. The appellants have agreed to, there are two appellants in this case, and we've agreed to split the time equally. Each of us are taking on one of the two contested aspects of SLUSA's application to this case. Mr. Lim's counsel will be addressing the misrepresentation language and whether misrepresentation is an essential predicate to the non-fraud claims. And on behalf of Mr. Schwab's counsel, I'd like to ask Andrew Love to address the misrepresentation language and whether Schwab's promise to route trades based on best execution, which was material to the decision to use Schwab as a broker, was also material to the decision to purchase or sell securities. In Chad and Park v. Troyes, the Supreme Court repeatedly emphasized that the transaction to look at when determining whether a misrepresentation is in connection with the purchase or sale of covered securities is the transaction involving the securities themselves. So Chadbourne seems to focus on some sort of causal relationship, but then in the next breath it says, we do not hereby modify DABIT, which pretty clearly said there doesn't have to be any causal relationship. So how do we reconcile those two and which one prevails? So when Chadbourne talks about modifying DABIT, I believe what they're talking about is not modifying the core holding of DABIT, which is that SLUSA precludes holders as well as purchasers and sellers. And so the fact that Chadbourne is focused on the transaction involving purchase and sale, it makes sense that they wanted to clarify that, that it also includes holders. Well, here's the language in DABIT that troubles me. It's the in connection with requirement, DABIT says, is satisfied, and I'm quoting, if misrepresentation simply coincide with a securities transaction. And in Chadbourne, the Supreme Court says we're not upsetting DABIT. These surely coincide with the securities transaction, don't they? Well, they're still very separate. They're very separate transactions. But no, I guess my question is, if we read that language in DABIT for all it's worth, don't these coincide with securities transactions? And also, I mean, Chadbourne says, repeats that language. We held that it was material to and coincided with third-party transactions, but then adds the clause while also inducing the plaintiffs to hold their stocks long beyond the point where, had truth been known, they would have sold. So does that add, does that modify DABIT, even though they say they're not? It seems like it does. I mean, it — Or does that merely describe the facts in Chadbourne? Well, it's interesting that they add here not just coincide, but they add the phrase, the words material, which isn't in DABIT. But they do talk about the importance of materiality. And they go on several different times in several different ways to make clear that it is the decision to buy or sell securities that is critical to making the connection. They say, misrepresentation must be material to a decision by individuals to buy or sell a covered security. There misrepresentation makes a significant difference to somebody's decision to purchase or sell a covered security. Well, but isn't the essential allegation here, if you strip it down, that your clients would not have sold their securities this way had they known about the UBS deal? I mean, you know, what they're really saying is we were entitled to sell them a better way that might get us a better price for them. And so isn't that, at bottom, an argument that had we been told everything, we would have demanded a different way of selling them? They may have demanded a different route, but it wouldn't have any impact on the decision. Well, but it would have had an impact on their decision to sell at that time through these brokers this way. In other words, if somebody said you can sell today and we'll do the UBS deal, or you can sell in 10 minutes and we'll shop around the market for an execution person, they would have said we'll wait 10 minutes and get the execution person, wouldn't they? I believe what the Court is really focused on is not purchasing or selling securities generally, but it's focused on the particular trade. I mean, this is about inducing, SLUSA is about whether or not the fraud induces investors to sell particular securities. So your clients hired Schwab as their broker. So the representation in the contract, per hypothesis, induced them to hire the broker. Now, once they hired the broker, how are the individual buying and selling decisions made? So that's completely separate. So that happens, and then at some point, it could be months later, the investor decides I want to buy 100 shares of IBM at $100 a share, and they contact Schwab to route the trade, and then Schwab, not using best execution factors, routes them to UBS. Okay, so the language certainly induced them to hire Schwab, and then the question is having been induced to hire Schwab, I guess like a one step removed is they're asking Schwab to make specific purchases and sales. So is the knowledge that Schwab is using best execution as promised in their contract, is that in connection with their sales? Why isn't it? I mean, it's only one step removed. It's a factor involved in the sale, but it's not connected to their decision to buy IBM at $100 a share, and what often would happen is then the stocks go to the UBS dark pool, the high frequency traders can jump in and perhaps jump in line and take that trade themselves, and so then there's no... We understand that. Here's the question. So what if Schwab had said... I'm out of time, by the way. Well, that's the problem with splitting time. If Schwab had said, we'll do your execution in doing it, are you saying that your clients all would have said, it's okay, go ahead? If not, then it seems to me then it's a material aspect of the trade. So was the breach, I guess, or their statement that they would do it, was it a material fact in connection with the purchase or sale? I mean, that's the language of the statute. Right. Why wouldn't it be? Well, because as Chadbourne keeps emphasizing, it's not material to the decision to purchase... To the specific decision. ...particular security. Okay, so we have to read... And I would also just point out that the dissent in Chadbourne also makes clear that it's a different approach than in David. All right. Thank you. Good morning. Leslie Hurst, I'm counsel for Lewis Lim. Would you put the mic in front of you? I find it... Okay. Yeah, well, it may be difficult for you, but we can't hear you otherwise. Okay. I'm going to speak about Sluice's misrepresentation and omission requirement. These are straightforward breach of fiduciary duty and contract claims. Plaintiffs say that Schwab's conduct breached the duty of best execution, and Schwab say their conduct did not breach it. So the Seventh Circuit really suggests that a class action against a securities company that alleges breach of contract or breach of fiduciary duty is simply not permissible under Sluice. I mean, they said you can bring your contract claim as an individual, but you can't bring it... Well, I'm not, first of all, sure that the Seventh Circuit went that far. And Chadbourne specifically says no. Chadbourne specifically says that Sluice does not preclude or bar all breach of fiduciary duty or contract claims. So if Chadbourne says that, why does every court – I mean, I can't find a single decision. It doesn't mean they're all right. But we have the district court below. We have the Third Circuit. We have the Seventh Circuit. We have the Southern District of New York last week in the E-Trade case. We have a slew of district court cases. And I can't find a single case that accepts your position. Is there one? Not on best execution. There's a number of decisions, including with this Court, where they look at breach of contract and fiduciary duty claims. And this is the first. There are cases that say that breach of contract or fiduciary duty claims might not be subject to. But I'm looking at this fact pattern. Every time this fact pattern has been presented to a court anywhere in the country, they found the claim slew so barred. I'm not saying they're right. I'm just asking you, is there a single case that involves this fact pattern where you've won, or that you can cite? That's why we're here. Okay. And the only other – we do not have another, except for the Seventh Circuit, which is a fractured opinion. We do not have another servant court opinion which holds that. We have the trial court opinions. And I want to convince you why they're wrong. And why they're wrong is – Oh, sure. You should be able to. I just wanted to make sure I'd seen all the cases. And you're correct. They – well, I think Freeman governs here, because in Freeman, the dispute was over, like here, the meaning of a term, the meaning of cost of insurance. And this Court said, look, it's a question of whether the plaintiff's interpretation of cost of insurance is correct or defendant's is correct. That doesn't mean it's a nondisclosure or misrepresentation case. We've got the same thing here. The dispute is over what does best execution require. We say it requires Schwab to take certain steps, A, B, C, and D, and determine the best venue. Schwab says, no, we can outsource that. We can delegate that. But we have plenty of cases saying that we can construe this sort of claim to be a securities claim for misrepresentation. And that's cognizable by the SEC. And the opposing counsel has cited a lot of cases. Why shouldn't we construe it, then, and say we're going to look through the form of the claim and look at the substance, and the substance is merely another misrepresentation fraudulent practice claim? Well, the substance is not that. Just because the SEC can regulate this conduct and has in certain circumstances doesn't mean that that's what we've alleged. That doesn't mean that's what our case is about. And again, Schabhorn was clear. That the scope of SEC regulation is greater than what SLUSA covers. That argument was presented in Schabhorn because there the SEC was saying, wait a minute, Court, don't construe in connection with so broadly because you're going to limit our regulatory scope. And the Court said, well, that's nonsense. The regulatory scope of the SEC is far broader than cases that are barred by SLUSA. Sotomayor, that may be true, but in the opinion, the SEC says these claims are essentially 10b-5 claims, which do fall within our regulatory scope. Do we give that order some kind of deference? No, I don't think so, because in all of those cases cited by Schwab, the SEC does not talk about SLUSA, and the SEC does not say this is SLUSA. No, I agree they don't talk about SLUSA, but they do say the claims are 10b-5 claims. They do say the claims in those cases were fraudulent, misrepresentation, omission cases, and then they regulated them. They did not say they were 10b-5 cases. Well, but that's what 10b-5 is about. The claims in those cases were failure of best execution, weren't they? In some of them, they were. So I guess my question is still the same. What kind of deference do we give to the we may give no deference. I just I'm not sure. What kind of deference do we give to the SEC? I think you do not, because the facts of this case are different. In the facts of this case, it's not about failure to disclose. In fact, Schwab even generally disclosed what they were doing. They told people, you know, we've got a contract with UBS, we route to UBS, we get paid by UBS. It's not over what they said or didn't say. It's over what does best execution require and does their conduct comply with it or not. So what you're saying is you don't have a 10b-5 claim here. You couldn't plead one. I couldn't plead one and we didn't plead one. No, but you couldn't plead one. We couldn't plead one and we didn't. Do you want to reserve the rest of your time? Yes, I do. Thank you. All right. Thank you. Good morning. May it please the Court. Gilbert Sirota for the Schwab defendants. And I'm going to try to restrain myself to nine minutes if I can. Let me address both arguments very briefly. Both arguments elevate form over substance. Well, we do that all the time, right? Right. So if it's a contract, I guess I didn't see a stopping point with your argument. Any breach of contract can be a misrepresentation because you said one thing in the contract and you did something else. So what's the stopping point for your argument? Because we have precedent, Freeman and other cases, saying you can bring a contract, a breach of contract claim. Where the breach of contract claim in substance alleges deceptive and fraudulent conduct. They don't. Yes, they do. They say you breached your obligation to do best execution. You said you would do X and you didn't do it. This is exactly like this Court just considered in Hampton. Hampton tried to call itself a breach of contract. That was unpublished. The portion you want to rely on is unpublished, though. I think it's worth thinking about. But if you just focus on you say we're elevating, they're elevating form over substance. You may be right in this case, but I think PLUSA elevates form over substance, too. So my question is this. They make two claims that do not require under State law misrepresentation or omission as an element. Do you agree? Yes. Okay. So why aren't those claims that fall outside of SLUSA? The case law under SLUSA is crystal clear. I'm not saying the case law is quite clear. Let me just say, whether you – But tell me without regard to the case law, why do they fall under SLUSA? Because they allege deceptive and fraudulent conduct. They don't do. Yes, they do. Let me – if I can explain. The conduct that they're alleging is that Schwab promised its customers best execution In the contract and breached it. And had a regulatory duty. Isn't that true about every single statement in that contract? So any breach of contract claim falls into that rubric. Not – no, I wouldn't say that. Freeman is a good example of where it doesn't. Freeman – by the way, all of Freeman was found precluded by SLUSA, except for one discrete contract claim, which involved the interpretation of an insurance contract, completely independent from securities transactions. So you're saying any contract relating to securities law – so basically any contract with a securities company that relates to how the securities company will perform. Yeah, I think this – Any breach, any claim of breach is covered by SLUSA. Any contract in connection with. Is that your position? Yes. And let me tell you, the Seventh Circuit in the Holtz v. J.P. Morgan case said this. Allowing plaintiffs to avoid litigation at SLUSA by contending that they have contract claims about securities rather than securities claims would render the act ineffectual. So you would have us adopt a rule that – I think contrary to your opposing counsel, I think the Seventh Circuit did go that far, that any contract claim – any breach of contract claim is covered by SLUSA unless it's totally unrelated to securities. Is that what you're – If it involves a deceptive and fraudulent conduct. That's my problem here. So let me recharacterize their claim for you. They say, Schwab, we don't think you were ever lying to us. We just think you didn't sufficiently pay attention to your best execution duties and you breached the contract. You didn't lie to us. You told us you were going to deal with UBS. We trusted you. You did deal with UBS. But it turns out later we could have done – we would have done better had you dealt with somebody else. And that's a breach of contract. We don't think you lied. We don't think you failed to tell us anything. We just want to sue on a breach of contract. By the way, I think it's a crappy breach of contract claim, but that's for somebody else to decide. So why isn't that just a breach of contract? Because the theory of the case is essentially that when you entered into an agreement with UBS to route your trades to UBS, you were engaging in fraudulent and deceptive conduct because you did not tell us as customers that you were sacrificing best execution for – So if they didn't say that, Judge Hurwitz's hypothetical says, no, they said here's what we're going to do. So there's no untrue statement. There is the contract requirement, but they told them what they were going to do. Then I'm having trouble with the statute, which says the complaint has to allege an untrue statement. So they don't allege an untrue statement. I would say that that is only part of the statute. Well, it says an untrue statement or omission. And then the next provision says manipulative or deceptive conduct. So you're saying a breach of contract is a manipulative or deceptive device. Is that what you're saying? Of this variety where the argument is that you entered into a contract that undermined your ability to deliver best execution. And let me just say, the SEC, you – I know everybody says this. Where I'm having some difficulty, I don't want to speak for Judge Okuda, is that it's somehow counterfactual. We have a State law cause of action that does not require a misrepresentation and we're saying – or an omission. But we're saying nonetheless, it really does. And so let me change my hypothetical. Let's assume that the contract, the client contract with Schwab says, we're going to deal with UBS because that's the most convenient way for us to do it. It may result in the dark market occasionally undercutting your bid or making some profit off of it. But in the long run, it's the most efficient way for us to operate. Contract says that. It's fully disclosed. And then they bring a breach of contract claim. Maybe a terrible claim once again, but is it a Slusabart claim? Yes, it is. And I can tell you – Because that's essentially an omission or misrepresentation of the underlying issue of whether or not you're sacrificing best execution for profit. Let's assume the contract says, we may on occasion sacrifice best execution for efficiency. But that's why we're able to give you service at the price we give it to you. So it said that. Would you still say it was Slusabart? Yes, I still would say it's Slusabart. So your position is that every contract that has the – that meets the in-connection with language in SLUSA is barred by SLUSA? If you're bringing a State – Yes or no? Yes. If you're bringing a State law class action, and it involves breaches of best execution, it is covered by SLUSA. It's covered by SLUSA under all three prongs, as Judge Seaborg found. It's both an omission, it's a deceptive conduct, it's basically saying you took kickbacks in return for sacrificing best execution. So even though the complaint doesn't actually say any of those things, you're saying just as a matter of law, it's covered by SLUSA? Yes. And that's the most important teaching of the Supreme Court cases and DABIT is that you can have a valid claim, contract claim, doesn't matter whether it's a good claim or a bad claim. It doesn't have to mention fraudulent or deceptive conduct because if the substance and gravamen of it is manipulative and deceptive conduct, it's covered by SLUSA. And that's what every single case from the Seventh Circuit to New Jersey to New York have said about the conduct. And, you know, I'm running over time, but the Prater case in New Jersey Federal Court said something that I thought was quite instructive. It basically said a best execution claim is in essence a pattern and practice of misrepresentation, intent to deceive, manipulate, and defraud in a case that they were trying to avoid the application of SLUSA just like this one. Though I suppose Congress could have made a statute that said that, but this statute doesn't seem to say that. So you're saying as a matter of law based on other circuits' construction. I think it says it clearly. There's three prongs of it. I don't see that. The manipulate and defraud. I take it what you're saying is that any best execution claim has an element of a deception or omission and therefore it meets the statutory language. It's by nature and where a customer is allegedly deprived of best execution, it's by nature a manipulative and deceptive device. Is there any statute regarding best execution? Is there any statutory language or regulatory language defining?  There's FINRA rule 5310. Well, FINRA is not a statute or a regulation, right? Well, FINRA is adopted pursuant to approval by the SEC. And so it's been held to have the effect of. A quasi sort of legislative, but not actually an agency, right? Well, FINRA is an independent agency. But under rules, its rules do not go into effect unless the SEC approves them. So what is the status of them legally? What case explains that? What case explains that? What FINRA's regular – since FINRA is a private entity. Right. And has some sort of quasi relationship with the SEC. What case explains what sort of review or deference we give to FINRA's rules? Oh, that's a good question. I can't cite one off the top of my head, but the process, the adoption of FINRA rules requires notice under the Administrative Procedure Act and it requires approval by the SEC before it goes into effect. So we know it gets SEC blessing, but they are not the SEC. Yeah, but you don't have to go to that issue. But what does the FINRA rule tell us? FINRA rule tells us that you look at trades in the aggregate and you look at multiple factors. No, that tells us how one violates their duty of best execution. And a failure to provide best execution is a manipulative and deceptive device. And we know that because the SEC has brought claims. Do you want to give us that rule? The number of that rule? 5310. You would essentially be depriving the SEC of jurisdiction over best execution. No, they can enforce it, right? We know that SLUSA is a different issue. That just prevents class actions. But in connection with the in connection with language is a term of art that both defines SEC jurisdiction, civil jurisdiction under 10b-5, and the scope of SLUSA. They're all the same. So we're dealing with the first part. In other words, I buy the in connection with argument. The question is whether or not this is essentially alleged as a misrepresentation. It doesn't have to be alleged as a misrepresentation. No. Well, essentially, I said. Right. I said. I mean, you don't regard Hampton as precedent, but I think you — it has some language that I think is extremely appropriate here. And I'll just leave it to my colleague here after this, but it says a plaintiff need not make an allegation of fraud or deception, and SLUSA applies if the substance of the claim is — could be described as deceptive. Right. And so I want to go back to FINRA. What in FINRA helps us understand that the substance of the claim is fraud or deception? There's nothing in the FINRA rule that tells you that. Right. It just says they're in connection. Right. Okay. What I would refer you to more is the SEC's enforcement of best execution under the manipulative and deceptive conduct. So let me ask a question I asked your colleague on the other side. What do we — is that just instructive? Is it — do we defer? Does it get Chevron deference? Does it get — what kind of deference does it get? I think it's persuasive. I think an agency that is charged with enforcing the securities laws, who makes a decision as to whether a particular course of conduct is within or without its jurisdiction, that's a very persuasive element that the court should consider. And no — all SEC cases have sustained its own jurisdiction under a manipulative and deceptive device as to the issue of — Best execution. And I'll leave — I'm sorry I took so much time. Let me turn it over to UBS. May it please the Court. My name is David Bowen. I'm here on behalf of UBS Securities, LLC. UBS is a defendant only in one of the two cases before the Court this morning. We are not a defendant in the Lim case. We are a defendant only in the Fleming case. And is it as an aider and abetter? Is that the — what's the basis of your being a defendant? The two claims have been asserted against UBS by Mr. Fleming, one, as a principal violator of the unfair competition law, and second, as an aider and abetter of all of the tort action alleged against Schwab. So under — I'm blanking on this, but this is — these cases are purported to be covered by California law with respect to the State claims, right? They assert claims under State law, which is what brings them up. Yeah. So can one be an aider and abetter of a breach of contract in California? No. The law is clear, and we cite the case in our brief, Your Honor. And I'm not sure that that's contested here. I'm sure it's important here, either. Yeah. I'm just trying to figure out — frankly, I'm trying to figure out why you're a defendant. Yeah. Because UBS is a defendant because it's alleged to have participated in the deceptive scheme. Again, Your Honor, I think it's important. This is the Fleming case, which is plainly pleaded as a deceptive scheme perpetrated by fraud on its customers. UBS is alleged to have been a knowing participant in that scheme. UBS is alleged to have paid kickbacks to Schwab, received order flow from Schwab, knowing that Schwab was breaching its duty of best execution to its customers, and then subjecting those orders to manipulation in the UBS dark pool. That's, I think, the theory of aiding and abetting here. And that theory necessarily requires some sort of deceptive conduct on your client's part, if not Schwab's. There's no question about it. And in fact, Your Honor, our manipulation argument, there are two prongs of SLUSA, right? There's false statements or misrepresentations and omissions on the one hand, and manipulative or deceptive devices on the other. I'm sorry, Your Honor. I see my time is up. Please finish. The manipulative UBS was explicitly accused of manipulative conduct in the Fleming complaint. And we recite in our brief over and over again these repeated references to manipulation by UBS itself in the dark pool or by high-frequency trading firms that UBS knowingly exposed Schwab's orders to. It's Mr. Fleming who uses the term manipulation to describe what UBS did with respect to Schwab's orders. Now, we argued that in the district court. We argued that putting to one side the misrepresentation prong of SLUSA, insofar as you're asserting claims against UBS, you're out of the box because you've asserted manipulation. And that argument went completely unanswered in the district court. As the district court itself noted in its opinion, the first time we heard any attempt to defend against that argument was here in the appellant's reply brief. And, you know, under the law of this court, I think it's pretty clear that's too little, too late. And the arguments they make, namely that, you know, Judge Seaborg kind of misused the term manipulation or that, in fact, he didn't dismiss the case against UBS based on this manipulation prong of SLUSA as well as the deceptive prong, that's just wrong. And I refer the court to page 14 of the written opinion. Thank you. Okay. Do you have some time for rebuttal? Yes. Thank you. My opposing counsel contends that every best execution case is necessarily manipulative or deceptive. But I would like to remind the Court what this Court said in Freeman, which is, just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing they really involve deception or misrepresentation. And I would also like to remind the Court that in Lim, we don't even have a breach of contract case. Our claim is rigid. I know you represent Lim and not Fleming. Yes. But could you respond to this, perhaps? The Fleming complaint begins by saying we're alleging a bunch of things, including intentional misrepresentation, all out of a single course of conduct. It's not like it's a separate count. Doesn't that pretty clearly make that complaint one for intentional misrepresentation? No, because this Court has said you look claim by claim. You don't look at — you look at — But it's a single course of conduct. In other words, if you have a single course of conduct that can be described either as a breach of contract or as an intentional misrepresentation, then what — don't we have in substance an intentional misrepresentation? No. And I think they — that Fleming has the right to say this is the conduct that supports fraud, which, good luck. And this is the conduct that supports breach of contract — excuse me, contract. And you look at the claim separately. And that's exactly what the Court did, the Second Circuit, in — in Rekingate. There they said these fraud and negligent misrepresentation claims, you're barred by SLUSA. Those are based on misrepresentation. But fiduciary duty and breach of contract, those claims, which had to do with did — did the defendants properly administer the funds, did they properly manage the funds, those claims, those causes of action were not based on misrepresentations and were not barred by SLUSA. So that's where I think you go with — with Fleming. With Lim, of course, we — we don't have any misrepresentations at all. We're a breach of fiduciary duty case. But we don't just rely on your — see, I guess my question is, if — if — if we assume, for a moment, that Fleming accurately alleges a misrepresentation claim, and you just leave one out of your complaint, but allege — but seek liability for the same conduct, don't we have to characterize it as a misrepresentation claim? No. I — we're entitled to — to — to allege our case as we want. You don't — you don't impute someone else's allegation to us. No, no. But if we conclude that in Fleming it essentially is a misrepresentation claim, there is no difference in the claim in your case from Fleming, is there? You know, I think there is. There's difference in allegations, but you're — I think there is, because theirs is based upon breach of contract, where there's — they say there's representations regarding best execution that were breached. Ours is fiduciary duty, where the plaintiff doesn't even need to know. We're missing each other here. I know you've carefully alleged a different case than Fleming alleged. My question is, if we were to conclude that in Fleming the allegations essentially amount to a misrepresentation claim, why wouldn't we reach the same conclusion in your case, other than the fact that you haven't alleged it? We're not stuck with your allegations. That's what all the cases say. We look past the allegations into the substance. Aren't your cases substantively identical? I don't agree, and I'm having a hard time articulating why, but I don't agree. What's different in the conduct in Fleming than in your case? It strikes me as exactly the same conduct. It is the same conduct. So I guess it — I'm not being able to articulate why. That's okay. Yeah. Sorry. Yeah. And I apologize, but — can I make one final point on why Hampton is different? In Hampton, the material fact was misrepresented — it was a material fact misrepresented, which is we're going to invest in no more than 15 percent risky securities. In fact, they invested in greater than 15 percent risky securities. Here, we're like Freeman. It's how do you interpret best execution. If best execution requires the conduct we allege, it's violated. If best execution requires conduct that Schwab complied with, they win. But it's not a misrepresentation of a material fact. It has to do with interpreting a term and then applying it to the conduct in the case. And that's why Hampton is vastly different than this case. Okay. Let me thank both sides for their very helpful arguments. In the case of Fleming v. Schwab is submitted.
judges: Ikuta, Hurwitz, Molloy